SEXTON, Judge.
The defendant, Anthony 0. Edwards, was indicted for the crime of second degree murder. Defendant was sixteen years old at the time of the offense and was prosecuted as an adult in accordance with LSA-R.S. 13:1570. In plea negotiations, the charge was reduced to manslaughter and defendant pled guilty. He received the maximum possible sentence for the offense, twenty-one years at hard labor. The defendant now appeals, urging a reversal of his sentence on the basis that the sentence imposed is unconstitutionally excessive.
According to the factual statement read by the prosecutor and agreed to by the defendant at the guilty plea, the offense occurred on December 6, 1983 at Green Oaks High School, in Caddo Parish, Louisiana. The defendant, Anthony Edwards, went to Green Oaks High School on that morning of the 6th and was asked to leave by security officers. At approximately noon the same day, Anthony Edwards returned to Green Oaks High School, went inside the auto mechanics area of the school and was asked to leave. He left the grounds and was headed toward the parking lot when an unknown person called out his name. Edwards stopped at that time and turned around. The victim, Calvin Morgan, age fourteen, and two other boys, Donald McCarter and Chris Hawkins, together proceeded toward Anthony on the school ground. None of the other boys had any type of weapons, although they knew Anthony Edwards had a knife. As they got closer to Anthony Edwards, the victim, Calvin Morgan, had his hands out to his side with his fists clenched. At this time, Anthony Edwards stabbed Calvin Morgan with the knife. Calvin Morgan then walked a few steps back toward the school and fell down. Anthony Edwards ran from the school grounds.
According to the pre-sentence investigation report, the police obtained a taped statement from Jeffrey Kyles to the effect that Jeffrey and Calvin Morgan were walking outside the school when a black male, known to them as “Tony” approached and made threatening statements to Calvin Morgan. Jeffrey stated that it appeared as if Tony was going to push Calvin when Calvin grabbed his side and fell to the ground. At this time, Jeffrey stated that he saw Tony pulling a knife back from Calvin’s body and saw the blade. Jeffrey stated that Tony ran off the school campus, and further stated that Calvin did not have a weapon in his hand. The pre-sentence investigation report also mentions a statement taken from the duty teacher, Mr. Prelow, who stated that while he was outside on the school parking lot, a black male came on campus, went inside the building, and then came back outside. Mr. Prelow stated that the black male had been or *397 dered to leave the campus, and that as he was leaving, three students came out of the building. The black male suspect turned around and went back to meet the students. Mr. Prelow stated that he saw Anthony Edwards punch his hand at one of students. The student grabbed his stomach, began running toward Mr. Prelow, and fell to the ground. Mr. Prelow advised that he observed that the victim was bleeding, and additionally stated that he remembered passing this particular black male suspect in the hall previously in the school building and seeing the knife in his hand. The pre-sentence investigation also indicates that Shreveport Police officers took statements from a number of other witnesses to the offense, and all were basically consistent with statements taken from earlier witnesses.
At the sentencing hearing, defendant testified that on the day before the stabbing, he passed the Linear Junior High School and noticed the victim, Calvin Morgan, a fourteen year old boy, and a friend sitting on a bench. The defendant asked the victim and his friend what they were doing cutting class. The victim indicated to the defendant that he was not a student at Linear Junior High but rather was a student at Green Oaks High School, and the victim showed the defendant his school I.D. card. The defendant asked the victim’s friend for a light. The victim’s friend could not accomodate him, so the defendant asked the victim for a light. The defendant testified that the victim started to use profane language toward Edwards and snatched his gym bag away. According to his testimony, the defendant asked for his bag back but Calvin would not return it. The defendant stated that at this point, he pulled out a knife and the victim’s friend told the defendant to “cut him up; just go ahead.” The defendant then put away his knife and eventually was able to snatch his gym bag back. Afterwards, the defendant reported the incident to the school security guard. The security guard chased the victim and his friend off the campus by firing a warning shot in the air.
The next day, the defendant went to Green Oaks High School to meet a girlfriend around noon time. The girlfriend did not show up, and the defendant was asked to leave the campus by a teacher. Before he was asked to leave, the defendant evidently saw the victim and the victim’s first cousin. The defendant was a good friend of the victim’s first cousin. The victim told his first cousin that "this is the dude here that pulled the knife on me yesterday.” The victim’s cousin responded that the defendant was a friend of his and the defendant started to leave the Green Oaks campus.
According to the defendant, just before he got to the edge of the campus, he heard a voice call his name from behind. The defendant turned around and saw the victim and at least three other people, one of whom was his friend Chris Hawkins. The defendant perceived that at least two of the three bystanders were with the victim.
Defendant testified that the victim became verbally abusive toward him and advanced on him. The defendant responded, “Stay back, man, I don’t want to hurt you,” but the victim continued to advance. The defendant pulled out a knife. The victim responded “I’m not scared of your knife.” The defendant stated that the victim was just about to “swing” when he stabbed the victim with the knife. After the stabbing, the defendant ran and threw the knife away. The defendant was eventually arrested at School-Away-From-School.
Chris Hawkins, who testified at the sentencing hearing, observed the defendant pull out a knife, and he heard the victim respond “I’m not scared of that knife.” Hawkins indicated that the defendant “just held the knife out at arm’s length and [the victim] walked up on the knife.” According to Hawkins’ testimony, the defendant was defending himself. Hawkins also stated that the victim’s fists were clenched just before the stabbing. Hawkins testified that the victim was taller than the defendant but was about the same weight as the defendant.
*398 After the stabbing, an ambulance was summoned. The victim was in obvious pain but was still alive when the ambulance arrived. However, it took approximately forty or fifty minutes for the ambulance to arrive at the scene. Evidently, the ambulance had to wait for a train before it could get to the Green Oaks High School campus. Calvin Morgan was dead upon his arrival at the hospital. Dr. Robert Braswell, the Caddo Parish Coroner, stated that the victim died of internal bleeding caused by the knife wound.
A sentence is unconstitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of proportion to the severity of the offense or inflicts unnecessary pain and suffering. Furthermore, a sentence within the statutory range may be excessive when considered in light of the individual defendant and the circumstances of his crime. State v. Thomas, 447 So.2d 1053 (La.1984).
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
In pronouncing sentence upon this first offender, the trial judge noted that the state recommended the maximum sentence. The trial court also discounted the defendant’s story that two other boys were acting in concert with the victim in advancing upon him since this fact was not verified by the defendant’s witness. The trial judge also found that the testimony by defendant that the victim was using profane language toward him was also unverified. The trial court stated that the stabbing of the victim was a brutal response to a mere threat of a fight from someone who was two years younger than the defendant. The trial judge noted that although the defendant had been involved in prior fights, the victim had not been involved in any of the prior beatings. The trial judge concluded that there was an undue risk that the defendant would commit other crimes because of his poor record at school. The trial judge believed that the defendant was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the defendant’s crime. The trial judge further noted the defendant’s presentence investigation report recommended that the defendant not be given a probated sentence.
According to the trial judge, the only 894.1 B mitigating factor present was the fact that the victim’s conduct did contribute in some way to the defendant’s action. The trial judge also considered the defendant’s age as a mitigating factor as well as the fact that the defendant did not actually intend to kill the victim but only instead intended to inflict great bodily harm. The trial judge concluded that the defendant was one of the worst manslaughter offenders and that the victim’s actions actually constituted the crime of second degree murder. The trial court also* considered the leniency extended to defendant through the plea bargaining process, and imposed the maximum possible penalty, twenty-one years.
In evaluating defendant’s excessive sentence claim, we make note of certain background facts which were brought forth at *399 the sentencing hearing. The defendant was born in Detroit, Michigan, on June 6, 1967. The defendant’s mother and father separated and defendant’s father moved to Shreveport, Louisiana. The defendant continued to live with his mother in Detroit, Michigan until approximately 1981. At that time, the defendant’s mother was ill and the defendant moved to Shreveport. The defendant’s mother died about a year later.
The defendant evidently had a difficult time adjusting to life in Shreveport. According to the witnesses at the defendant’s sentencing hearing, the defendant had been attacked by a gang of boys near his own age on two different occasions. On one such occasion, the defendant received a “busted lip and a few other bruises.” On still another occasion, while the defendant walked to his house with his step-mother, step-sister and half-brother, he was followed by some of the boys who had attacked him. The gang of boys used obscene language toward the defendant and his family and were eventually chased away by one of the defendant’s neighbors.
The record reflects that the defendant also had an extremely difficult time adjusting in school. The defendant had to have five counseling sessions with the Green Oaks High School counselor because of various academic and attendance problems. The defendant was suspended from Green Oaks High School on seven different occasions. Three of the seven suspensions were related to fighting. However, the policy of Green Oaks High School at the time was to suspend all students involved in the fighting regardless of who started the fight. The defendant’s other suspensions were related to cutting class and leaving the school campus without permission.
The defendant had been transferred to “School-Away-From-School” by the time of this crime because of his academic and attendance problems. The defendant’s last report card from Green Oaks High School reflected two D’s, three F’s and an incomplete. The defendant had missed class so often that he automatically received the failing grades. The defendant was transferred to the School-Away-From-School so that he could catch up and possibly pass on to a higher level in school.
The record reflects that the defendant’s father was often called to Green Oaks High School for conferences after the defendant’s suspensions. According to the defendant’s father, the suspensions the defendant received for fighting occurred because someone else provoked a fight with the defendant. The defendant’s father attributed the defendant’s adjustment problems to the fact that the defendant was a “talker,” a “ladies’ man” and a “foreigner.”
The defendant was also suspended from the School-Away-From-School for fighting. In the incident at School-Away-From-School, the defendant was jumped by two other students after a dispute. After the suspension, the defendant was forced to call his father to come pick him up from school because he believed that the same students were planning to attack him after school.
The record also reflects that despite his academic and adjustment problems at school, the defendant was very active in the church where his father was pastor. The defendant was a junior usher and a junior deacon. The defendant also sang in the junior choir. A deacon in the church described Tony as a nice, quiet and humble child who “would do things for me as quick as he would for his dad,” and who was at church everytime there was a service.
One of defendant’s neighbors, Nicholas Winston, testified that Tony performed odd jobs for him such as cutting the yard and spreading dirt. Mr. Winston stated that Tony was energetic, warm, polite and outgoing. Mr. Winston opined that Tony was not a trouble making child and had tried to be friends with the people in the community. Another neighbor, Mr. Paul Tyson, stated that Tony was not mean or mischievous, and was always respectful and likeable.
Defendant’s friend, Chris Hawkins, testified that Tony was not a trouble maker but *400 that he did not fit in with his peers. Hawkins stated that the other boys picked on Tony and laughed at him, especially in front of girls.
In summary, the evidence reflects that Tony Edwards was a clean cut young man who was active in his church and well liked by his neighbors but who had a difficult time adjusting to school and life in the south. He was involved in a number of fights and was attacked on two occasions by more than one person, although it was clear that the victim did not participate in these previous beatings. Thus situated, we are presented with a sixteen year old offender who, when confronted by a fourteen year old child in a schoolyard, pulled a knife and stabbed the fourteen year old victim who was apparently unafraid of the knife and continued to advance after it was drawn.
The victim clearly provoked the fatal incident. On the other hand, the defendant seems to have initiated the encounter of the previous day. Clearly the force used was not reasonable under the circumstances because the defendant was not in imminent danger of losing his life or receiving great bodily harm. LSA-R.S. 14:20(1). It appears, as found by the trial judge, that the offense committed was actually second degree murder. The defendant must have intended to inflict great bodily harm upon this victim. LSA-R.S. 14:30.1(1). Yet, in the light of the defendant’s manifested good character at home and in the neighborhood, and his troubled peer associations, we have difficulty perceiving the defendant as the most egregious of offenders, whatever label is attached to the offense.
Obviously we find this to be a close and troubling case. In the final analysis, because the offense to which the defendant pled does not adequately describe the actual conduct involved, the penalty imposed does not shock our sense of justice. We are thus unable to say that the sentence imposed, while harsh, is unconstitutionally excessive. The sentence appealed is affirmed.
AFFIRMED.