775 So.2d 607 (2000)
STATE of Louisiana
v.
Jerry OSBORNE.
No. 2000-KA-0345.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2000.
*608 Harry F. Connick, District Attorney of Orleans Parish, Jane L. Beebe, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III.
PLOTKIN, Judge.
Jerry Osborne was convicted of manslaughter, a violation of La. R.S. 14:31, and was sentenced to twelve years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He now appeals his conviction and sentence, asserting two assignments of error. We affirm the conviction and amend the sentence for the reasons below.

STATEMENT OF THE CASE
On June 17, 1999, the defendant was indicted for the second degree murder of Kelvin Etheridge. The defendant entered a plea of not guilty at his arraignment on June 22, 1999. Hearings on defendant's motion to suppress identification were held on August 16, 1999 and September 7, 1999. The trial court subsequently denied defendant's motion to suppress identification. After a jury trial on September 27, 1999, the defendant was found guilty of manslaughter. A sentencing hearing was held on October 1, 1999. At the hearing, the trial court denied defendant's motions for new trial and post judgment verdict of acquittal. The defendant waived delays, and the trial court sentenced defendant to serve twelve years at hard labor without benefit of probation, parole or suspension of sentence. Defendant's motion to reconsider sentence was denied.

STATEMENT OF FACT
On April 18, 1999, Renata McClinton was playing outside her grandmother's house when she saw her uncle, Kelvin Etheridge, across the street. Etheridge was arguing with a woman. McClinton went inside her grandmother's house and told her grandmother that Etheridge was arguing with someone. Her grandmother went to the front door and called for Etheridge. At that time, Etheridge walked out of the corner store with a beer in his hand. The woman was swinging a knife at him. The defendant then came walking down the street with a gun and shot Etheridge twice.
*609 Delores Ruth, Etheridge's mother, was at home the day of the shooting. She was in her kitchen when Etheridge came in to use the restroom. Etheridge had been across the street drinking with some of his friends. Later, her granddaughter, Renata McClinton, came and told her that the victim was fighting with someone. Ruth went to her front door and called for Etheridge. He looked at her and then walked to the corner store. A couple of minutes later, Etheridge came out of the store with a beer in his hand. A woman sitting near the store exchanged words with him. The woman took a knife from under her dress and started swinging the knife at Etheridge. Etheridge kept hopping away from the knife. The defendant walked towards Etheridge and shot him. Etheridge was not armed. Ruth acknowledged that her son was drunk that day and "drank like a fish." She stated that Etheridge and the defendant would drink together. She also admitted that Etheridge had a criminal record and was known for being aggressive.
Cynthia Haynes testified that on April 18, 1999, she and the defendant, Jerry Osborne, were visiting her friend, Sandra Brown, who lived on St. James Street. They were all sitting outside at approximately 3:00 p.m. when Etheridge came up to them. Etheridge verbally harassed her and then put his hand in her face. The defendant jumped up and told Etheridge to leave Haynes alone. Etheridge then walked to the corner store. When he returned, he put his feet in Haynes' face. The defendant again told Etheridge to leave Haynes alone. Etheridge cursed the defendant and told the defendant that he would kick the defendant's "ass." Etheridge then kicked the defendant, causing the defendant's hat to fall off of his head. Etheridge kicked the defendant again and knocked him to the ground. Haynes took out a knife but did not swing it at the defendant. She had the knife with her because she was eating a piece of fruit on the way to her friend's house. Ms. Haynes further testified that Etheridge was known to be physically and verbally abusive when he drank. Etheridge was drunk on the day of the shooting. Etheridge was approximately forty years old. The defendant was seventy-two years old. Another friend, Tyrone, broke up the fight between the defendant and Etheridge after Etheridge hit the defendant. She did not know the defendant had a gun. Etheridge threatened the defendant. Haynes also stated she felt threatened. Haynes did not see the defendant with a gun, but she heard the shooting. After the shooting, Haynes caught up with the defendant, who had started walking home, and walked home with him. The police came to their house the next day. Haynes went to the police station with the defendant. She was the defendant's girlfriend for ten years and had lived with him for six years.
Sandra Brown testified that she lives on St. James Street. She was outside at the time of the shooting. The defendant and Cynthia Haynes were visiting her that day. While Brown, Haynes and the defendant were sitting outside, Etheridge approached Haynes and put his foot in Haynes' face. The defendant told Etheridge to stop. Etheridge then hit the defendant with his fist and knocked the defendant down. One of Brown's neighbors came over and stopped the fight. The neighbor asked Etheridge not to hit the defendant. Etheridge approached the defendant again and threatened him. Brown then heard gunshots. She did not see the defendant shoot Etheridge.
Willie Miller testified that he was outside of his residence on the day of the shooting. He saw Etheridge and Cynthia Haynes engage in a verbal argument. Etheridge put his hand in Haynes' face and later put his foot in her face. Miller stated he saw Etheridge hit the defendant, and the defendant fell to the ground. Tyrone Lee broke up the fight. Etheridge then struck the defendant again. Etheridge was known to be dangerous. Miller further testified that he did not see the *610 defendant actually shoot Etheridge. However, he did see the gun in the defendant's hand.
Officer Stephanie Collura responded to the call of a shooting at the intersection of St. James and Chippewa Streets on April 18, 1999 at approximately 5:40 p.m. When the officer arrived on the scene, she observed a black male lying on the ground. There were several people standing around him, including his mother. Moments later, other police officers and emergency medical technicians arrived. The EMTs treated the victim. The officer canvassed the area for weapons to no avail.
Randall Grady was one of the EMTs who responded to the call. When he arrived on the scene, the victim was lying in the street. Fire department personnel were administering CPR. The victim was unresponsive and not breathing. They transported the victim to Charity Hospital.
Sergeant Michael Fejka interviewed several witnesses at the scene. The officer also took formal statements from the defendant, Cynthia Haynes and Marlin Loydrake.
The defendant's statement was read to the jury. In the statement, the defendant stated that he, Cynthia Haynes and Sandra Brown were sitting outside Brown's residence on St. James Street at approximately 4:45 p.m. on April 18, 1999. While they were sitting there, Etheridge walked up and put his foot in Cynthia's face. The defendant told Etheridge to stop. Etheridge then struck him and knocked him to the ground. Someone broke up the fight, and Etheridge walked to the corner grocery store. When Etheridge returned, he started threatening the defendant again. The defendant walked to a nearby vacant lot where he had left his gun. The defendant located his gun and walked back towards Etheridge. As Etheridge approached the defendant, the defendant took the weapon out of his pocket and shot Etheridge twice. The defendant was approximately four to five feet from Etheridge. The defendant stated that he shot Etheridge twice because he was not sure if he hit Etheridge the first time. The defendant also admitted that he did not think Etheridge was going to kill him. The defendant then walked home. On his way home, he threw the gun into the Mississippi River. The defendant stated he shot Etheridge because Etheridge was going to beat him up and Etheridge was much younger than he was.
Detective Robert Hoobler investigated the homicide. After learning that the victim had died at the hospital, the officer spoke with the victim's mother. She identified the defendant in a photographic lineup as the perpetrator. The officer also interviewed two eyewitnesses, Tyrone Lee and Marlin Loydrake. The officer then prepared an arrest warrant for the defendant.
Dr. William Newman, a forensic pathologist with the Orleans Parish Coroner's Office, performed an autopsy on the victim. The cause of death was a gunshot wound to the left arm. The bullet exited the arm and reentered the left chest area damaging the lungs and other major organs. There was another gunshot wound to the right hip. The victim's blood alcohol level was .18. There was no evidence of any other drugs.

ERRORS PATENT
A review of the records reveals an error in sentencing. La. R.S. 14:31 provides that a person convicted of manslaughter "shall be imprisoned at hard labor for not more than forty years." There is no prohibition against parole, probation or suspension of sentence.[1] However, La. C.Cr.P. article 893 provides that persons *611 convicted of violent offenses listed in La. R.S. 14:2(13) are to be denied the benefit of probation and suspension of sentence. The trial court erred when it stated that the defendant's sentence was to be served without benefit of parole. Defendant's sentence should be amended to delete the prohibition against parole.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends that the State did not produce sufficient evidence to prove that he did not act in self-defense.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). Additionally, "the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268, 1275 (La.App. 4 Cir.1989).
A homicide is justifiable if committed by one in defense of himself when he reasonably believes that he is in imminent danger of being killed or of receiving great bodily harm and that the homicide is necessary to save himself from that danger. La. R.S. 14:20(1). When a defendant claims self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Lynch, 436 So.2d 567, 569 (La.1983); State v. Brumfield, 93-2404, p. 4 (La.App.4 Cir.6/15/94), 639 So.2d 312, 315. Regarding self-defense, "it is necessary to consider whether the defendant had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save the defendant from that danger." State v. Dozier, 553 So.2d 911, 913 (La.App. 4 Cir.1989), writ denied 558 So.2d 568 (La.1990). "In order for the defendant's actions to be justified, the force must be reasonable under the circumstances and apparently necessary to prevent an imminent assault." State v. Golson, 27,083, p. 6 (La.App.2 Cir.6/21/95), 658 So.2d 225, 230, writ denied, 97-0165 (La.10/10/97), 703 So.2d 600.
The evidence produced at trial does not support the defendant's contention that he acted in self-defense. While the testimony of all the witnesses indicates that the victim physically and verbally assaulted the defendant, a seventy-two year old man, there is no evidence that the victim was armed with any type of weapon. The defendant admitted in his statement that the victim was not armed with a weapon. The defendant stated he was fearful of the victim even though the victim was not armed with a gun. The victim had previously struck the defendant and made him fall on the ground. The defendant was fearful of another attack at the time he shot the defendant. However, the victim was not armed with a weapon and therefore, the defendant's use of a gun to defend himself was excessive. Further, the defendant admitted in his statement that he shot the victim twice because he was not sure if he hit the victim the first time. The defendant also acknowledged that he did not think the victim was going to kill him.
Additionally, the defendant withdrew from the altercation, walked away from the *612 scene to an empty lot, secured his weapon, returned with a gun and shot the victim twice. The victim's prior aggressive behavior, at that time, had terminated. Defendant could have walked away from the scene and not returned.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
The defendant also argues that the twelve-year sentenced imposed by the trial court is an unconstitutionally excessive sentence.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence, although within the statutory limits, is constitutionally excessive if it is "`grossly out of proportion to the severity of the crime' or `is nothing more than the purposeless and needless imposition of pain and suffering.'" State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985)(quoting State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985)). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. C.Cr.P. article 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719, 720 (La.1983); State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
If adequate compliance with La. C.Cr.P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. Caston, 477 So.2d at 871. The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. Quebedeaux, 424 So.2d at 1014.
In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400, this Court affirmed a thirty-three year manslaughter sentence for a sixteen-year-old first offender who drove the car but did not pull the trigger in a drive-by shooting. In State v. Maxie, 594 So.2d 1072 (La.App. 3 Cir.), writ denied, 598 So.2d 372 (La. 1992), the Third Circuit affirmed a statutory maximum sentence of twenty-one years at hard labor for manslaughter for a twenty-two year old defendant with no prior convictions who shot the victim four times. In State v. King, 563 So.2d 449 (La.App. 1 Cir.), writ denied, 567 So.2d 610 (La.1990), the First Circuit affirmed a twenty-one year maximum sentence for a defendant who fired one shot at point blank range killing his estranged wife.[2]
Prior to sentencing the defendant in the present case, the trial court allowed the defendant and the State to make statements concerning the appropriate sentence. The trial court then stated:
I find Mr. Osborne's actions in killing Mr. Kelvin were more than just a little extreme. It's my understanding that from the reading of the history in the wild west, in the western parts of the United States, that's how men would settle his (sic) disputes by shooting at one another. It seems Mr. Osborne decided that he'd settle this dispute in the fashion that was allowed in the wild west. I would hope that we have progressed further than that in the past one hundred and fifty years.
Mr. Osborne, the court is particularly disturbed by the fact that you had a gun hidden in an empty lot. There was no explanation for why that gun was hidden there presented to the jury. However, my understanding of the facts and testimony in the case indicates to me that you could have proceeded to a telephone and summoned help from the New Orleans Police Department instead of proceeding *613 to that empty lot to retrieve that gun. I don't know of any corner store that doesn't have a telephone. It seems to me that your sick friend would have had a telephone. There were so many other options that were available to you than to remove your gun from that empty lot and return to shoot Mr. Etheridge not once but twice. My understanding from the statement that you gave to Detective Fejka at the time of your arrest is the reason you shot the individual twice was you did not think you hit the individual the first time. However, it is in the record and the gentleman was shot by the first gun shot and he fell into the arms of the bystander.
I have taken into consideration your client's age. I have also taken into consideration Article 893 and Article 894.1 of the Louisiana Code of Criminal Procedure. I have considered the aggravating and mitigating circumstances in this case.
With all of that in mind, it is the sentence of the court that you serve twelve years in the custody of the Louisiana Department of Corrections at hard labor with credit for time served without the benefit of probation, parole, or suspension of sentence.
The trial court recognized the defendant's advanced age but also noted the severity of the crime. The defendant shot an unarmed man twice. The defendant admitted in his statement that he did not believe the victim was going to kill him. In light of the circumstances of the present case, the sentence imposed is not unconstitutionally excessive.
This assignment is without merit.

CONCLUSION
Accordingly, the defendant's conviction is affirmed. The defendant's sentence is affirmed as amended to delete the prohibition against parole.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] La. R.S. 14:31 states that when the victim was killed as a result of a battery and under the age of ten years, the person convicted of manslaughter of the victim shall be imprisoned without the benefit of probation or suspension of sentence for at least ten years but not more than forty years. However, that provision is not applicable in the present case as the victim was over the age of forty.
[2] However, the appellate court amended the sentence to twenty-one years to be served without benefit of probation, parole or suspension of sentence for five years.