# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**24-580**


**STATE OF LOUISIANA**

**VERSUS**

**YVETTE GRAGG LOGAN**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6957-23
HONORABLE BOBBY LYNN HOLMES, JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## ELIZABETH A. PICKETT
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabeth A. Pickett, Wilbur L. Stiles, and Clayton Davis, Judges.


**AFFIRMED.**


**Stephen C. Dwight**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P. O. Box 52988**
**Shreveport, LA 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Yvette Gragg Logan**

**PICKETT, Chief Judge.**

On January 22, 2023, Yvette Gragg Logan shot and killed her husband William G. Logan. Ms. Logan immediately called 911 and reported that she had shot her husband and believed he was dead. Ms. Logan was arrested by the Calcasieu Parish Sheriff's Department and transported to jail. When questioned about the incident, Ms. Logan admitted she had shot her husband two times after he started yelling at her for failing to put away his hunting gear. Ms. Logan was charged by a true bill of indictment with second degree murder in violation of La.R.S. 14:30.1. Ms. Logan pled not guilty and not guilty by reason of insanity.

Ms. Logan was examined by a forensic psychologist. Her counsel provided the district attorney with the psychologist's evaluation report and letters submitted by Mr. and Ms. Logan's children, other family members, and friends. In November 2023, Ms. Logan pled guilty to the charge of manslaughter, a violation of La.R.S. 14:31, without objection by the State.

In January 2024, after a hearing at which Ms. Logan introduced the above documents and the testimony of one of Mr. Logan's children, the trial court sentenced Ms. Logan to fifteen years at hard labor with credit for time served. During that hearing, the trial court observed that Ms. Logan was remorseful for her actions. It also reviewed the sentencing guidelines set forth in La.Code Crim.P. art. 894.1 and identified the guidelines applicable to Ms. Logan. Ms. Logan filed a motion to reconsider sentence, urging her sentence was excessive in light of Mr. Logan's harsh and abusive treatment of her during their marriage.

On April 1, 2024, the trial court conducted a hearing on Ms. Logan's motion to reconsider her sentence. Children of Mr. and Ms. Logan and other family members, and a friend of Ms. Logan made statements to the trial court. The trial

court granted Ms. Logan's motion and sentenced her to twelve years of imprisonment at hard labor.

Ms. Logan filed a timely motion for appeal and assigns one assignment of error with the trial court's sentence. She argues Mr. Logan inflicted "merciless and sadistic physical and emotional abuse on their family, including her" during their almost thirty-year marriage. Ms. Logan stated she finally "snapped" during one of Mr. Logan's abusive tirades and shot him. She urges the trial court erred in sentencing her to twelve years imprisonment "given the unique circumstances created by Mr. Logan's own cruelty."

## DISCUSSION

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence can be excessive, even if it is within the applicable statutory range, if it is grossly disproportionate "to the seriousness of the offense or nothing more than a imposes purposeless and needless infliction of pain and suffering." *State v. Craighead*, 24-1219, p. 1 (La. 2/5/25), 499 So.3d 99. When reviewing sentences for excessiveness, appellate courts must consider the punishment and the crime in light of the harm to society and gauge whether the sentence imposed is so disproportionate that it shocks the court's sense of justice and whether the sentence does nothing more than "inflict pain and suffering." *Id.*

A trial court is afforded wide discretion in determining sentences, and an appellate court will not set aside a trial court's sentence for being excessive if the record supports its sentence. La.Code Crim.P. art. 881.4(D); *State v. Doyle*, 23-696 (La.App. 3 Cir. 5/22/24), 388 So.3d 1226. The issue on appeal is whether the sentence constitutes an abuse of the trial court's great sentencing discretion, not whether a lighter sentence may have been more appropriate. *State v. Cook*, 95-

2

2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). In reviewing a trial court's sentencing discretion, appellate courts should consider the nature of the crime, the nature and background of the offender, and sentences imposed for similar crimes. *State v. LeJeune*, 24-213 (La.App. 3 Cir. 11/6/24), 397 So.3d 431.

Mr. and Ms. Logan had both been previously married. Ms. Logan's children lived with them, and Mr. Logan's children lived with their mother. The couple had one child together. The evidence introduced by Ms. Logan at the hearing on her motion to reconsider her sentence established Mr. Logan was a very harsh man whose punishment of their children for small infractions would be considered a form of torture by many. The children moved out of the family home as soon as they could, leaving Mr. and Ms. Logan alone. As Mr. Logan aged, his eyesight deteriorated such that he was considered legally blind. He also developed other physical conditions, which together with his blindness, limited his independence. The evidence indicates these physical frailties heightened Mr. Logan's already harsh nature.

Ms. Logan described the events that led to her shooting Mr. Logan. She began by explaining she and Mr. Logan had been at his mother's house all day where she was painting to prepare the house to sell. On the way home, they stopped for dinner. She described the day as "the best day I had had in forever" because Mr. Logan did not get angry all day. Unfortunately, Mr. Logan's demeanor changed when they walked into their home. Ms. Logan described it as being similar to a light switch being switched on, stating Mr. Logan began screaming and yelling and calling her names because his hunting rifle and gear had not been put away. Initially, they each went in separate rooms until Mr. Logan

3

screamed for her to bring him his pills.[1] Ms. Logan explained she did not get the pills but went and got a hand gun stored next to the television. She then walked into the bedroom where Mr. Logan was, and he laughed at her when he saw the gun and asked what she was going to do with it. Ms. Logan turned to walk out of the bedroom. As she turned, Mr. Logan began "cussing" and "cutting" her down.

Ms. Logan then described the shooting:

> I turned. I didn't aim. I just fired. I just fired out of aggravation. I didn't aim. I wasn't intending to kill him. I just fired out of pure aggravation. He turned around[,] and he said, you shot me. He said, you shot me. I said, oh, my God. I said, let's just call 911. I said let's just call the hospital.

According to Ms. Logan, Mr. Logan then grabbed the gun from her and walked to the front door. He stated "I should F-ing shoot you." Ms. Logan testified it was unclear to her exactly what happened next but stated they both had the gun at one point, when she said "let's just put it up. I will call the cops. It fired the second time." She did not know how the gun fired and did not know if he had the gun, she had the gun, or they both had the gun when it fired. Ms. Logan testified she did not mean to kill Mr. Logan.

At the resentencing hearing, Mr. and Ms. Logan's children, two of Mr. Logan's brothers, and one of Ms. Logan's sisters made victim impact statements. The trial court also had the statements submitted at the first sentencing hearing. The statements showed Mr. Logan was very strict and harsh on the children and Ms. Logan. His punishment for the children's poor grades, failing to obey, and some seemingly minor infractions included kneeling on rice for hours at a time, eating meals and drinking water from the floor, doing without food and water at times, keeping the pantry locked, and having snacks for himself but not others.

---

[1] When originally sentencing Ms. Logan, the trial court stated Mr. Logan told Ms. Logan to get the remote. Ms. Logan, however, testified to the grand jury and at the resentencing hearing, that Mr. Logan told her to get his pills but she got the gun.

4

Every witness attested that Mr. Logan was harsh and cruel to the children and to Ms. Logan. One witness testified Ms. Logan also had a short temper and would throw things when she got upset.

The trial court addressed Ms. Logan's motion, stating:

> I am here to determine what's an appropriate sentence for the taking of someone's life when you were not in fear of receiving great bodily harm or death because if that were the case, you'd have a valid self-defense claim.
>
> So what I'm taking from it is, at some point you just had enough[,] and you went and retrieved a gun[,] and you shot your husband.
>
> The Court is moved by the testimony of the children. They had first–person knowledge, were in the home with you and your now deceased husband.
>
> With that being the case, the Court is inclined to grant the reconsideration. I will at this time sentence you to 12 years with the Department of Corrections at hard labor. I will give you credit for time served since the date of your arrest.
>
> I'm going to tell you, Ms. Logan, I really do that with a lot of consternation, because I have the State come in here weekly and ask me for a lot more time with people who have done a lot less serious things.
>
> I'm giving you the benefit of a law abiding life, your age; because I'm going to tell you, I think your kids helped you, because when I came in here I wasn't inclined to grant it at all.
>
> I don't like the loss of human life. Specifically when, I mean, I understand he was yelling at you, you know. I'm sure my wife yells at me some time. I don't get to shoot her, you know. It's not what we get to do.

The state points out that the trial court thoroughly reviewed the sentencing factors set forth in La.Code Crim.P. art. 894.1 when it imposed the fifteen-year sentence on Ms. Logan. Nonetheless, the trial court determined the harsh treatment she endured living with Mr. Logan warranted a reduction in her sentence.

Ms. Logan argues her sentence should be reduced further but does not cite any cases in which a defendant similar to her received a lesser sentence. In *State v.*

*Osborne*, 00-345 (La.App. 4 Cir. 12/6/00), 775 So.2d 607, *writ denied,* 01-315 (La. 12/14/01), 803 So.2d 985, a seventy-year-old defendant without a criminal record was sentenced to twelve years for manslaughter after he shot and killed an unarmed man. The victim had previously knocked the defendant down, and the defendant asserted he was fearful of the defendant attacking him again even though the victim was not armed with a gun when the shooting occurred. The court determined defendant's use of a gun to defend himself under those circumstances was excessive.

Similarly, in *State v. Edwards*, 476 So.2d 395 (La.App. 2 Cir. 1985), a sixteen-year-old young man charged with second degree murder pled guilty to manslaughter and was sentenced to the then maximum sentence of twenty-one years for manslaughter for killing a fellow student who provoked him. As here, the young man was not in imminent danger of losing his life or suffering great bodily harm when he attacked his school mate. On appeal, the court recognized the defendant exhibited good character at home and in his neighborhood but had troubled interactions with school mates and had been attacked more than once by school mates. The court also noted that it had "difficulty perceiving the defendant" as an egregious offender. *Id.* at 400. Nonetheless, it determined the trial court's sentence was not excessive.

Ms. Logan was a sixty-one-year-old law-abiding citizen with no prior offenses when she shot Mr. Logan. She testified her "aggravation" with Mr. Logan's complaining and badgering led to her getting the gun and shooting him. She acknowledged Mr. Logan did not threaten or attempt to physically harm her before she retrieved the gun and shot him. The trial court noted that Ms. Logan had options other than shooting Mr. Logan to relieve her aggravation.

We have reviewed the evidence in the record together with the trial court's reasons for sentencing Ms. Logan and find the trial court did not abuse its broad discretion in sentencing her to twelve years, which is less than one-third of the forty-year maximum sentence for manslaughter. We recognize Ms. Logan is a first-time offender who has shown genuine remorse for killing Mr. Logan. However, like the trial court, we are also mindful of the seriousness of her offense and the fact that she was not threatened with or subjected to physical harm before shooting him. Instead of walking away, as she had done previously during their many years of marriage when Mr. Logan ridiculed or berated her, Ms. Logan shot and killed him. Accordingly, the trial court did not abuse its discretion in sentencing Ms. Logan to twelve years imprisonment for manslaughter.

## DISPOSITION

Yvette Gragg Logan's sentence of twelve years imprisonment for manslaughter is affirmed.

**AFFIRMED.**