635 So.2d 1298 (1994)
STATE of Louisiana
v.
Felix PRICE.
No. 93-KA-1472.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1994.
*1299 Harry F. Connick, Dist. Atty., David L. Arena, Karen E. Godail, Asst. Dist. Attys., New Orleans, for plaintiff/appellee.
John M. Standridge, New Orleans, for defendant/appellant.
Before BARRY, LOBRANO and ARMSTRONG, JJ.
BARRY, Judge.
Defendant was convicted in 1979 of first degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant filed an appeal with the Louisiana Supreme Court to review for errors patent. The conviction was affirmed. State v. Price, 385 So.2d 15 (La.1980). Subsequently the defendant was granted an out of time appeal. State ex rel. Price v. Whitley, 608 So.2d 161 (La.1992).

FACTS
On the morning of March 9, 1979, Robert Johnson was standing with Samuel Brown and James Floyd at or near the corner of Eighth and Magazine Streets in New Orleans. The defendant and Jimmy James approached the corner, then proceeded down Magazine Street. Johnson left his two companions and proceeded down the street after the defendant and James. The defendant and James testified that Johnson called to them, spoke with James, then asked the defendant if he remembered him. An argument ensued between Johnson and the defendant.
Samuel Brown testified that he followed Johnson on Magazine Street and he saw a man running with a knife in his hand. Brown saw Johnson, who was bleeding, stagger into the middle of the street. Johnson died after James Floyd helped him to a nearby yard.
Floyd testified that he was talking to Jimmy James when the verbal altercation between Johnson and the defendant began. Johnson was holding a can of beer and asked the defendant "Are you ready?" The defendant responded, "Yeah, I'm ready." Johnson then told the defendant "But next time I see you I'm going to kill you." Floyd turned and saw the defendant with a knife and walking away from Johnson. Johnson threw beer into the defendant's face and attempted to back away. The defendant then stabbed Johnson several times.
Floyd's testimony was corroborated by Jimmy James. James testified that the defendant removed a knife from a brown pouch *1300 before Johnson reached them in the street. Also, before Johnson threatened to kill the defendant, Johnson asked the defendant if he had a knife and the defendant said no. James testified Johnson never tried to strike the defendant.
Brown, Floyd and James all testified that Johnson was not armed.
The defendant testified that when he and James initially passed the three men on the corner the defendant recognized Johnson from a previous disagreement and walked away to avoid trouble. When Johnson approached and asked the defendant if he recognized him, the defendant claimed that he became frightened. The defendant testified that he punched Johnson after he threw beer into his face. Both men tripped and the defendant heard the click of a knife opening. The defendant said he wanted to defend himself so he grabbed the knife out of Johnson's hand. Johnson lunged forward and the defendant swung the knife several times and killed Johnson.
Johnson's autopsy revealed four stab wounds, two of which could have been fatal. One of the latter wounds was to the mouth and penetrated the lip, broke two teeth, partially severed the tongue, and cut the back of the throat causing blood to enter the lungs. The other fatal wound was to the chest, six inches deep, and it penetrated the lung. One of the non-fatal wounds was a large, deep cut in the scalp. The other cut was a deep wound in the back. Johnson's blood alcohol level was .3%, and scars on his arms indicated he used narcotics. Tests were negative for drugs.

ERRORS PATENT
Our review of the record for errors patent reveals none.

JURY CHARGE ON REASONABLE DOUBT

a. Constitutionality
The defendant argues that the charge on the definition of "reasonable doubt" was unconstitutional.
The jury instruction reads:
However, this doubt of which we speak must be a reasonable doubt, not just any doubt. It must be a doubt founded upon a real, tangible, solid, sound, common sense basis. It must be such a doubt as would give rise to a grave uncertainty in your mind by reason of the unsatisfactory character of the state's evidence. It must be such a doubt that it is not founded on caprice or whimsy, or guess work, or fancy, but on sound, solid reason, a doubt for which you could give a valid reason in your mind. [Emphasis added.]
Defense counsel did not file a contemporaneous objection, therefore the issue was not preserved for appeal. State v. Berniard, 625 So.2d 217 (La.App. 4th Cir.1993), on rehearing, 625 So.2d 220 (La.App. 4th Cir.1993).[1]

b. Ineffective Assistance of Counsel
The defendant argues in his pro se brief that trial counsel was ineffective for failing to object to the jury charge. Defendant relies upon Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in which a similar charge was held constitutionally infirm, and on Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), in which the Court held that a Cage instruction constituted a "structural defect in the constitution of the trial mechanism," depriving the defendant of his Sixth Amendment right to trial by jury, and is not subject to a harmless error review. The jury instruction in Cage contained "grave uncertainty" and "moral uncertainty" and "actual substantial doubt."
To substantiate a claim of ineffective assistance of counsel, defendant must show that counsel's performance was deficient and that the deficiency prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Harris, 624 So.2d 443 (La.App. 4th Cir.1993).
In State v. Harris, this Court recognized that "grave uncertainty," standing alone in a jury instruction on reasonable doubt, does *1301 not necessarily constitute a Sixth Amendment error and may be subject to a harmless error analysis. This Court assumed arguendo that counsel's failure to object was deficient, satisfying the first prong of Strickland, then analyzed whether the error was harmless.
As in Harris, the jury instruction here only contained the term "grave uncertainty." However, since Harris this Court has held that counsel's failure to object to a Cage instruction years before that instruction was found to be unconstitutional cannot be deemed deficient. State v. Wolfe, 630 So.2d 872 (La.App. 4th Cir.1993). This same rule applies here, where the jury charge contains less restrictive language than in Cage. Because counsel's failure to object to the charge in this case occurred prior to Cage, the failure to object cannot be deficient. Therefore, we do not reach whether the defendant was prejudiced by his counsel's failure to object. This assignment is without merit.

SUFFICIENCY OF THE EVIDENCE
In his second and third assignments the defendant argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense and, alternatively, that the evidence was insufficient to support a conviction of first degree murder under the statute at that time.
The standard of appellate review of sufficiency of the evidence to support a defendant's conviction is "... whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." State v. Heck, 560 So.2d 611, 614-15 (La.App. 4th Cir.1990), writ den. 566 So.2d 395 (La.1990), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
When the defendant asserts justification as a defense to murder, the State bears the burden of proving beyond a reasonable doubt that the killing was not justified. State v. Matthews, 464 So.2d 298, 299 (La.1985), citing State v. Lynch, 436 So.2d 567 (La.1983); State v. Patterson, 295 So.2d 792 (La.1974). The standard is whether a rational factfinder, after reviewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others. State v. Matthews, supra.
A homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20. See LSA-R.S. 14:18. A person who is the aggressor cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw. LSA-R.S. 14:21.
In this case, the testimony indicates that the defendant first called out to Johnson's companions. After the defendant and James passed, Johnson called James. James testified that the defendant began removing a knife from a brown pouch before Johnson arrived near them. Johnson then initiated contact with the defendant by asking if they knew each another. James and Floyd testified that Johnson threatened the defendant and asserted he was going to kill the defendant. However, Floyd said Johnson threatened to kill the defendant the next time they met. A fight started with the defendant throwing the first punch after Johnson threw the beer. The defendant stated that when they fell to the ground he heard a knife opening and he grabbed the knife out of Johnson's hand to protect himself. However, Brown, Floyd and James all testified that Johnson did not have a knife and was holding a can of beer. James testified that Johnson never tried to strike the defendant.
There was sufficient testimony for the jury to conclude that the victim was not armed and the defendant did not reasonably believe he was in imminent danger of losing his life *1302 or receiving great bodily harm. Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could find beyond a reasonable doubt that the defendant did not act in self-defense.
The defendant argues that the evidence viewed in the light most favorable to the prosecution does not support first degree murder,[2] but manslaughter.
Manslaughter is a homicide which is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. LSA-R.S. 14:31(1). Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled at the time the offense was committed. Id.
"Heat of blood" and "sudden passion" are not elements of manslaughter, but rather, mitigating factors which lessen the degree of culpability of the crime. State v. Lombard, 486 So.2d 106, 110 (La.1986). A defendant who establishes those factors by a preponderance of the evidence is entitled to a manslaughter verdict. Id. at 111; State v. Camp, 571 So.2d 195, 200 (La.App. 4th Cir. 1990).
The defendant testified that on a prior occasion he and his brother argued with Johnson and Johnson pulled a knife. That argument ended without further incident. All of the State's witnesses testified that Johnson was not armed. Although Johnson threw beer in the defendant's face, there was testimony that he did so only after the defendant drew a knife. Moreover, there was testimony that Johnson attempted to back away after throwing the beer, but he tripped. The defendant tripped over Johnson and then stabbed him multiple times.
We conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors of "heat of blood" and "sudden passion" were not established by a preponderance of the evidence. Viewing the evidence in the light most favorable to the prosecution, the jury could have found that the defendant had the specific intent to kill or inflict great bodily harm. This assignment has no merit.
The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The author of this opinion wrote the dissent in State v. Berniard, supra, based upon Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
[2] At the time of this offense occurred, first degree murder was defined as second degree murder is now defined, i.e., the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm.