I,PLOTKIN, Judge.
Edwin J. Stark was charged by bill of indictment on August 14,1997, with second degree murder, a violation of La. R.S. 14:80.1. At his arraignment on August 18, 1997, he pled not guilty. However, after trial on October 16,1997, a twelve-member jury found him guilty of the lesser included offense of manslaughter. He was sentenced on December 30, 1997, to serve forty years at hard labor.
At trial Officer Edwin Ducote testified that on June 28, 1997, about 6:44 a.m. he was just finishing roll call at the police station when the defendant came in and announced that he was involved in a shooting at Lizardi and North Roman Streets. The officer advised the defendant of his rights from the Rights of Arrestee Form and handcuffed him. The defendant made a statement that the victim had tried to rob him.
Dr. Richard Tracy, an expert in forensic pathology, testified that he performed the autopsy on Terry Miller. She had been shot once in the face, and the bullet was recovered from the back of her head.
Officer Charles Augustus testified that he arrived at the homicide scene on |2the corner of North Roman and Lizardi Streets about 6:15 a.m. on June 28 th; there he found a woman lying in a pool of blood and bleeding from her head. The woman had no weapon; an asthma inhaler and a beer can were found nearby.
Officer Byron Winbush, an expert in firearm identification, testified that he examined a Colt .38 caliber gun and the bullet found in the victim’s body. The bullet was fired from the Colt .38 gun.
Mr. Dan Miller, husband of the victim, testified they had been married for nineteen years. He said he had never met the defendant. Mr. Miller came upon his wife’s body in the street as he was looking for her; he said she was a drug user and was frequently found in that area.
Mr. Robert Stark, the brother of the defendant, testified that he saw Edwin Stark at about 2:30 a.m. on June 28 th at the Phipps Inn where Robert Stark works as a bartender. Edwin Stark remained in the bar approximately fifteen minutes; during that time he ordered a beer and drank it. Later that morning, about 7:15 a.m., Edwin Stark and Steve Celestine came back to the Phipps Inn, and Celes-tine asked to speak to Robert Stark in private. When they went to the back, Celestine told him, “Your brother just shot somebody.” Robert Stark replied, “I don’t even want to hear it. Just get away from me.” Robert Stark said he had known Terry Miller, the victim, for twenty-five years, and he always found her to be a quiet and calm person. He knew of no problems between her and his brother.
Steve Celestine testified that he met the defendant at the Phipps Inn about 12:30 a.m.; the defendant asked Celestine for a ride home. The defendant said he wanted to leave the bar before his brother arrived to work there. When Robert Stark arrived, the two men left, but instead of going home, they went to the Blue Gardenia Club because Stark wanted to go in for a minute. While Celestine waited |3in the car, the defendant walked toward the club; he was approached by a woman, and he told her to get into the car because he was going to take her home with him. He then went into the club. After about fifteen minutes of waiting, the woman got out of the car and left, and Celestine went into the club where he found the defendant at the poker machine talking with another woman. The defendant then said he wanted to go next door to Randolph’s, which is a restaurant. Both men went to the restaurant, and the defendant ordered a sand *333 wich. As he was leaving, he met yet another woman; he told her to get into the ear, and the three left. Celestine said that when he stopped at the stop sign on the corner of North Roman and Lizardi Streets, two women approached the car. One of them said, “There he is,” and extended her arm through the window to put her hand on Stark’s face. The defendant jumped out of the car and touched her. She said, “That’s the way you want to do it? That’s the way you’re going to do me?” Celestine was looking down at the radio dial when he heard a shot. He jumped from the car and asked what was going on. The defendant got into the car, saying, “Let’s go.” Celestine did not want to leave, but he decided they had to tell someone. (Both the woman in the car and the second woman on the corner left the scene immediately.) He drove back to the Phipps Inn to speak to Robert Stark. The defendant told his brother that the “woman was messing with me,” but Celestine stopped him, saying, “don’t say nothing like that.” Robert Stark told Celestine to “[g]et him out of here.” The defendant then said he wanted to go to the police station; once there, the defendant told the desk officer, “I think I shot somebody.”
Detective Patrick Young testified that he investigated the scene and recovered the murder weapon from the car driven by Steve Celestine. The Colt .38 was on the floor of the passenger’s side of the car; it was in a bag with some of the [4food from Randolph’s Restaurant. After his arrest, the defendant made a statement; that statement was read to the jury.[1]
The parties' stipulated that body fluid tests performed on Terry Miller showed that her blood alcohol level was .16 percent and cocaine was found in her system.
In his sole assignment of error, the defendant argues that the forty-year maximum sentence is excessive because the trial court (1) based the sentence upon erroneous factual findings, (2) did not support the sentence with the mitigating and aggravating factors listed in La. C. Cr. P. art. 894.1, and (3) did not consider the special circumstances of this case.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence, although within the statutory limits,. is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless and needless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. C. Cr. P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, supra. The | ¿reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra.
At the sentencing hearing on December 30, 1997, the judge heard from the victim’s sister, Miriam Blakes, and the defendant prior to sentencing. Ms. Blakes said that the defendant’s act had changed her family’s life forever. She said she thought the verdict should have been different, implying that the conviction should have been *334 for second degree murder. The defendant took the stand and said,
I’m sorry, it was an accident, and I ask the Lord every day and every night to forgive me for what I did. And I hope you’ll find one day in your heart to forgive what I did.
In his reasons for judgment, the judge first noted that the defendant was found guilty of manslaughter after being indicted for second degree murder, and then he stated that a pre-sentence investigation report into the defendant’s background had been received. He had also received a letter from the victim’s mother in which she expressed her displeasure with the jury verdict. The Court then addressed the defendant:
You’re 44 years old. I note that for the record. I note you do have an extensive arrest record. You have two prior felony convictions, you’re a third felony offender — a conviction for narcotics, possession of heroin, a conviction for carrying a concealed weapon by a convicted felon. The first time you received a suspended sentence and was [sic] placed on probation, the second time you did do a jail sentence.
* * * * * *
Another thing that it was somewhat— you know, you talked about remorse today, and it’s very difficult sometimes— it’s very difficult sometimes but for me to say are you really sorry — are you really sorry. I know you’re sorry right now, I know that, but the question I ask Lmyself is, when this thing occurs, Mr. Starks [sic], .... you don’t stick around. This is a lady that I understand there was some relation with. I understand that it wasn’t a total stranger. But you don’t stick around. She’s on the ground, she’s laying [sic] there, there’s no call for any help or anything like that. Everyone walks away. I don’t know that the calling of any 911 or emergency assistance might have made a difference, I don’t know that it would have made a difference, but there was no effort. .... You did turn yourself in to the police after you knew that you were wanted. But I mean, this is a senseless act. You know, there are too many guns on the street right now, and when someone walks into a barroom with a gun and you know they serve those drinks there and you know you’re going there to get a drink and you know sometimes that the drinking affects a human being and his ability to reason and his ability to think and removing of inhibitions, it makes you brave, and yet if you still drink with a gun on you and then you walk out there with the gun, you know, these sorts of things are bound to happen. And it’s not like this was the first time because you’d had a gun before. You knew it was wrong for you to carry a gun.
Those are the things that makes it difficult for me to have sympathy for you. Those are the factors that enter in. It’s not like you’re 16 or 17 years old. You’re a forty-four-year-old man. You’ve been around the block once or twice. You know what this system is about and you should know, more importantly, what life is about. And you should know, more importantly, what death is about, and that’s what you’ve caused. You’ve caused grief for these people. '
******
Your lawyer’s right, this sentence ... is to punish you for your actions, for what you did to another human being. You did what I consider is the ultimate. You took the ultimate with regard to another human being. You took that person’s very existence.
And I have to couple that with the fact that you do have a significant background, a significant background of guns and drugs. And this is sort of right back into the same situation. Alcohol is ... a form of drugs and guns..
In contesting the constitutionality of the sentence, the defendant first argues that *335 the trial court based the sentence on erroneous factual findings that were not | supported by the record. The defendant refers to this passage from the trial court’s reasons for imposing the forty year sentence:
This thing occurs after an incident in a barroom. I know people were leaving the barroom late in the night. There’s some disturbance, some disagreement in the barroom between you and her, and unfortunately, this happens too many times because I’ve listened to it too many times, not that I frequent barrooms but that I’ve heard it too many times, that what happens in the barroom, when people go their own way, they have to take it outside the barroom. I know the management and the owners of the bar, they always say, “Take it outside.... ” But people can never take it outside and just walk away from it. They’ve got to take it outside and then carry it on and there’s no one outside usually to intervene, to try to separate the parties or pull people apart, and that’s sort of what happened in this case. There was nobody outside and the thing escalated and she, unfortunately, does not walk away; you did. She stays there with a bullet in her head as a result of your action.
The defendant contends that there was nothing in the record to support the judge’s statement that something occurred in a barroom between the defendant and the victim. This contention is based on Steve Celestine’s testimony; Celestine said that there were no confrontations between the defendant and victim at either the Phipps Inn or the Blue Gardenia Club. However, Celestine waited in the car for fifteen minutes while the defendant was in the Blue Gardenia. Moreover, the defendant stated that he saw the victim on the afternoon of the shooting and gave her a dollar; he also stated he saw her again at a lounge that evening. When asked what they talked about, he answered, “[Njoth-ing.. she asked me what I was into., and I told her nothing.” This self-serving statement cannot be taken at face value; the defendant gave at least two versions of what happened when he shot Miller. The trial court’s assumption that the defendant’s prior encounter with the victim in the bar led to the fatal encounter cannot be labeled erroneous. The testimony of IsCelestine is that they seemed to resume an argument as soon as they saw one another. Furthermore, the judge’s emphasis was on the risk inherent in carrying a gun after drinking for six hours.
The defendant next argues that the trial court did not consider the aggravating and mitigating factors listed in La. C. Cr. P. art. 894.1. However, the reasons for the sentence indicate the judge considered the fact that the defendant had been convicted before for carrying a weapon. He also had a prior conviction for possession of heroin, and the judge likened the defendant’s indulgence in alcohol to drug addiction. The judge noted that this offense contained elements of his prior crimes. He found deliberate cruelty to the victim in the defendant’s leaving the murder scene immediately instead of trying to get help for the victim. He noted the great loss to the Miller family as a result of the defendant’s act. As to the mitigating factors, the judge found none; he found no provocation and no excuse for the shooting.
The defendant lastly maintains that the maximum sentence is excessive for this defendant because this crime was not the most heinous imaginable but just a “typical” manslaughter case. The defendant cites one case in which a defendant pleaded guilty to manslaughter rather than be tried for first degree murder and another where the defendant shot the victim four times; in both, the defendants got the maximum sentence. State v. Black, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied 96-0836 (La.9/20/96), 679 So.2d 430; State v. Taylor, 91-2496 (La.App.4 Cir.3/9/94), 635 So.2d 416. In the case at bar, the judge justified the maximum sentence by considering the defendant’s age, *336 his criminal history, his recidivism, his cruelty in leaving the victim to die in the street, and the lack of provocation for his actions.
|9The next inquiry is whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances. This sentence does not appear excessive in light of the jurisprudence. In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400, this Court affirmed a thirty-three year manslaughter sentence for a first offender who drove the car but did not pull the trigger in a drive-by shooting.
The trial court has great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court re-imposed the trial court’s forty-year manslaughter sentence on a youthful defendant; in that opinion the Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘ whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” [Cites omitted]. For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. Art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” [Cite omitted]. In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, [cite omitted], a remand for resentenc-ing is appropriate only when “there appeals] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” [Cite omitted].

(.Id.).

In the case at bar, we find that the trial court adequately considered | incircumstances in accordance with Article 894.1 before imposing the sentence. We further find that the defendant’s sentence of forty years at hard labor is not excessive in light of the circumstances of this case. The trial court found that the facts supported a conviction for manslaughter, and the court supported the imposition of the maximum sentence with a strong statement. We cannot say the sentence is constitutionally excessive. Defendant’s arguments are without merit.
For the foregoing reasons, we affirm the defendant’s conviction and sentence.

AFFIRMED.

. In his statement, the defendant described the incident: “I shot her by accident.. I was in the car.. I was in car.. I got out., we was talking., and she punched me in my face., and caused [sic] about my momma and I accidentally slapped her with the gun and the gun went off.”